UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

Plaintiff,

v.

TRYN PARKER,

Defendant.

**DECISION AND ORDER**

6:25-MJ-04034 CDH

## INTRODUCTION

Defendant Tryn Parker is charged by criminal complaint with possession with intent to distribute, and conspiracy and attempt to possess with intent to distribute, 400 grams or more of fentanyl, 50 grams or more of methamphetamine, and 28 grams or more of cocaine base and cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A), (b)(1)(B), and (b)(1)(C); with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1); and with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Dkt. 1 at 1). Mr. Parker now moves to dismiss the criminal complaint, invoking Federal Rule of Criminal Procedure 12(b). (Dkt. 42). The government opposes the motion (Dkt. 51), and Mr. Parker has filed a reply (Dkt. 55).

As an initial matter, I note that it is unclear whether a motion pursuant to Rule 12(b) is an appropriate vehicle for seeking dismissal of a criminal complaint, and neither the government nor Mr. Parker has provided any authority relevant to

this question. "There are few written decisions that explore this issue[.]" *United States v. Coiscou*, 793 F. Supp. 2d 680, 683 (S.D.N.Y. 2011). At least one court outside this Circuit has concluded that "there is no basis for a defendant filing a motion to dismiss a complaint containing felony charges for failing to contain probable cause for the arrest," explaining that the availability of a preliminary hearing adequately protects a defendant who has been arrested on less than probable cause. *United States v. Kang*, 489 F. Supp. 2d 1095, 1096 (N.D. Cal. 2007). However, in *Coiscou*, the court reached the opposite conclusion, finding that a magistrate judge has "the legal authority to dismiss a complaint for lack of probable cause at or after an initial appearance following an arrest." 79 F. Supp. 26 at 684. The *Coiscou* court reasoned that there is "little difference between dismissing a complaint for lack of probable cause at a preliminary hearing—as a magistrate judge must under Rule 5.1(f)—and dismissing the complaint at some point during or after an initial appearance but before a probable cause determination at such a hearing has been made." *Id*. at 684; *see also United States v. Tejada,* No. 06 MAG.770(GWG), 2006 WL 1669695, at *1 (S.D.N.Y. June 19, 2006).

Assuming without deciding that I have the authority to dismiss a criminal complaint for lack of probable cause pursuant to a Rule 12(b) motion, I decline to exercise that authority here, because there is ample probable cause for the charges in the criminal complaint, as detailed below. In making this determination, I have considered the facts alleged in the criminal complaint and the affidavit in support thereof, as amplified by the information presented at the detention hearing held on

April 10, 2025. *See generally United States v. Goldberg*, 756 F.2d 949, 950 (2d Cir. 1985); *United States v. Brennan*, No. 1:24-CR-00012 (AMN), 2024 WL 6472423, at *1 (N.D.N.Y. July 10, 2024). I have not credited Mr. Parker's contrary factual assertions. *See Goldberg*, 756 F.2d at 950 ("Contrary assertions of fact by the defendants will not be considered."); *see also United States v. Pack*, 255 F. Supp. 3d 695, 698 (S.D. Tex. 2017) (explaining that in the context of a preliminary hearing, "[a] court must view the evidence in the light most favorable to the prosecution").

I further decline to dismiss the case based on Mr. Parker's contention that he is being prosecuted based on fabricated evidence and therefore his right to due process is being violated. (*See, e.g.,* Dkt. 42 at 6-10; Dkt. 55 at 9-10). Mr. Parker argues that government officials fabricated a connection between him and the criminality alleged in this matter, and that there is nothing linking him to any purported conspiracy. Mr. Parker has not submitted any evidence, apart from his own unsworn assertions, to support this contention. Moreover and more importantly, it is clear upon examination that Mr. Parker's claim of fabricated evidence is an attack on the adequacy of the government's evidence and the inferences that can be drawn therefrom. But at this stage of the proceedings, if the evidence is sufficient to establish probable cause—which it is—that ends the Court's inquiry.

## DISCUSSION

### I. Jurisdictional Impact of Pending Interlocutory Appeal

As a threshold matter, I note that there is a pending interlocutory appeal in this matter. Specifically, Mr. Parker has sought review of the Court's order that he

be detained pending trial. *See Parker v. United States*, No. 25-1898, Notice of Criminal Appeal, Dkt. 1 (2d Cir. Aug. 1, 2025).

"As a general matter, the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal. A district court does not regain jurisdiction until the issuance of the mandate by the clerk of the court of appeals." *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quotation, citation, and alteration omitted). "[A]n interlocutory appeal, unless frivolous, generally divests the district court of jurisdiction respecting the issues raised and decided in the order on appeal." *Ret. Bd. of Policemen's Annuity & Ben. Fund of City of Chicago v. Bank of N.Y. Mellon*, 297 F.R.D. 218, 220 (S.D.N.Y. 2013) (quotation omitted).

Here, the Court decided as part of the detention decision that there was probable cause to conclude that Mr. Parker had committed the controlled substance offense and the possession of a firearm in furtherance of drug trafficking offense charged in the criminal complaint, and relied on that determination to conclude that the rebuttable presumptions described in 18 U.S.C. § 3142(e)(3)(A) and (e)(3)(B) applied. Mr. Parker has argued in his interlocutory appeal that probable cause was lacking. *See, e.g., Parker v. United States*, No. 25-1898, Motion for Bail, Dkt. 17 (2d Cir. Sep. 3, 2025). This Court has thus arguably been divested of jurisdiction over the question of whether probable cause exists as to these charges.

However, that does not mean that the Court lacks the authority to deny the pending motion to dismiss. Federal Rule of Criminal Procedure 37 provides:

> (a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:
>
> (1) defer considering the motion;
>
> (2) deny the motion; or
>
> (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 37(a). Accordingly, under Rule 37(a)(2), I retain the authority to deny the instant motion notwithstanding the pendency of Mr. Parker's interlocutory appeal. *See United States v. Armstrong*, 132 F.4th 736, 737 (4th Cir. 2025) (explaining that Rule 37 empowers the Court "to entertain the motion and deny it, defer consideration, or state that it would grant the motion if the court of appeals remands for that purpose or state that the motion raises a substantial issue") (quotation omitted); *see also United States v. Brennan*, 385 F. Supp. 3d 205, 208 (W.D.N.Y. 2019) (applying Rule 37 in the context of an interlocutory appeal).

## II. Adequacy of the Criminal Complaint

"Probable cause . . . exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) (quotation omitted). "While probable cause requires

more than a mere suspicion of wrongdoing," *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007) (quotation omitted), it "is not a high bar," *D.C. v. Wesby*, 583 U.S. 48, 57 (2018) (quotation omitted). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243 n.13. This is a lower standard than preponderance of the evidence, *United States v. Patterson*, 25 F.4th 123, 135 (2d Cir. 2022), and a significantly lower standard than beyond a reasonable doubt, *United States v. Villegas*, 700 F. Supp. 94, 100 (N.D.N.Y. 1988), *aff'd*, 899 F.2d 1324 (2d Cir. 1990). "The fact that an innocent explanation may be consistent with the facts as alleged . . . will not negate probable cause." *United States v. Cancelmo*, 64 F.3d 804, 808 (2d Cir. 1995) (quotation omitted).

The crux of Mr. Parker's motion to dismiss is his argument that he was arrested and subsequently charged without probable cause, based on his mere presence during the execution of a search warrant at 29 Avenue C in Rochester, New York on March 25, 2025. Mr. Parker further argues that the charges against him are based on a fabricated connection between him and the evidence found during the execution of the search warrant.

It is a "well-settled principle that an individual's mere presence at a location for which probable cause to search exists or in the company of another for whom probable cause to arrest exists does not, standing alone, give rise to probable cause to arrest that individual." *United States v. Traylor*, No. 07-CR-6125L, 2009 WL 87470, at *7 (W.D.N.Y. Jan. 12, 2009), *aff'd*, 396 F. App'x 725 (2d Cir. 2010). However, this

principle only applies "where the facts and circumstances do not support an inference that the individual is connected to the proximate criminal activity." *United States v. Buckner*, 179 F.3d 834, 839 (9th Cir. 1999). "There is a distinction between 'mere presence' and presence under a particular set of circumstances that indicate participation." *United States v. Locascio*, 6 F.3d 924, 944 (2d Cir. 1993) (quotation omitted). In other words, "[t]he circumstances under which one is present may imply involvement." *Id.*

Here, the circumstances under which Mr. Parker was found at 29 Avenue C on March 25, 2025, go beyond mere presence, and sufficiently imply his involvement in the alleged proximate criminal activity for the purpose of establishing probable cause. Initially, 29 Avenue C is not a public place, but a private residence. Access to a private residence "is presumably limited, and thus a person's admission to the [residence] normally would raise a stronger inference of connection to the activities conduced within." *United States v. Holder*, 990 F.2d 1327, 1329 (D.C. Cir. 1993).

Beyond that, the appearance of 29 Avenue C on March 25, 2025, was consistent with that of a stash house or gate house, *i.e.*, a residence used primarily to sell narcotics. In his affidavit in support of the criminal complaint, Homeland Security Investigations Special Agent Aaron Kraham described 29 Avenue C as "heavily fortified." (Dkt. 1 at ¶ 6). The home's first-floor windows were boarded up, multiple entry doors were fortified with plywood and metal brackets, and a surveillance camera system comprised of 6 overt cameras was in place around the exterior of the home. (*Id.*). Air mattresses were observed in several of the bedrooms on the first floor,

and minimal clothes were in any of the closets. (*Id.*). The upstairs of the home consisted of two bedrooms, neither of which contained furniture, and one of which contained a mostly deflated air mattress. (*Id.*). In addition, a small hole was observed in one of the home's entry doors. (*Id.*). Special Agent Kraham noted in his affidavit that individuals selling drugs out of residences often utilize holes or openings in doors and windows to sell drugs to street-level customers. (*Id.*).

During their search, law enforcement officers located approximately 474 grams of cocaine, 545.8 grams of fentanyl, and 343.2 grams of methamphetamine concealed in locations throughout the residence. (Dkt. 1 at ¶ 14). Officers also found a loaded semi-automatic handgun and a magazine containing live rounds of ammunition that fit into the handgun inside a toilet tank and bowl, as well as numerous items of drug paraphernalia contained in a suitcase and plastic tote inside a closet. (*Id.* at ¶¶ 11, 13). Special Agent Kraham stated in his affidavit that based on his training and experience, the quantity of drugs and packaging materials found inside 29 Avenue C was indicative of an intent to distribute controlled substances. (*Id.* at ¶ 17).

Given the strong indicia that 29 Avenue C was a stash house, Mr. Parker's presence inside the house "permit[s] inferences that would not necessarily follow from [his] mere presence in a house in which people reside." *United States v. Heath*, 455 F.3d 52, 67 n.5 (2d Cir. 2006) (Hall, J., concurring in part). Specifically, it was and is reasonable to infer from Mr. Parker's presence that he was involved in the alleged criminal activity that constituted the residence's primary purpose. *See, e.g., United States v. Sepulveda*, 102 F.3d 1313, 1316 (1st Cir. 1996) ("The apartment in this case

was unfurnished and partly boarded up. There is no indication that it was used for any purpose other than distribution of drugs. The numerous walk-up sales the police had observed confirmed that the apartment was being used for drug distribution and strongly suggested that everyone in the apartment knew of this activity. It is only a short step to suppose that those present in the otherwise vacant apartment were probably drug dealers or purchasers.") (internal citation omitted).

It is also significant that, upon entering 29 Avenue C on March 25, 2025, law enforcement officers found Mr. Parker and his co-defendants in the kitchen area of the residence where drug sales and packaging materials were in plain view on the table. (Dkt. 1 at ¶ 10; Dkt. 18 at 7-8). Under such circumstances, it is logical to infer that Mr. Parker was complicit in the criminal activity, as "those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense." *Heath*, 455 F.3d at 57; *see also Maryland v. Pringle*, 540 U.S. 366, 373 (2003) (observing that "drug dealing . . . [is] an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him"); *United States v. Gordils*, 982 F.2d 64, 72 (2d Cir. 1992) ("where a defendant was arrested inside an apartment in which large quantities of narcotics were being packaged in plain view, the jury could infer that he was a trusted member of the narcotics organization operating from the apartment, because permitting outsiders to have such access would compromise the security of the operation"). In other words, the existence of probable cause is not based on Mr. Parker's mere proximity to others who are independently suspected of criminal

activity. Rather, under the totality of the circumstances, Mr. Parker's presence in a stash house with drug sales and packaging materials in plain view supports at least a fair probability that he himself was involved in the criminal activity. *See Holder*, 990 F.2d at 1329 ("Even if the drugs were not Holder's and instead belonged only to Jones, the circumstances indicated that Jones trusted Holder and considered him sufficiently complicit to allow him a full view of the drug distribution scene. . . . This is not a case in which the officers' probable cause depended partly on mere 'propinquity to others *independently* suspected of criminal activity.' The grounds for suspecting Jones applied almost equally to Holder.") (internal citation omitted and quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979)).

Moreover, during the execution of the search warrant, law enforcement officers located 12 knotted plastic bags containing 270 grams of cocaine, as well as some loose cocaine, inside the toilet bowl in the first-floor bathroom. (Dkt. 1 at ¶ 11). The government added the additional context at Mr. Parker's detention hearing that there was spilled cocaine on the floor of the home leading to the bathroom. (Dkt. 18 at 8). Taken together with the drug packaging materials in the kitchen, where Mr. Parker was found with the other co-defendants, it is a reasonable inference that Mr. Parker and his co-defendants were packaging the bags of cocaine when law enforcement arrived, and then hurriedly placed them inside the toilet bowl in an attempt to hide the cocaine, with some cocaine spilling incidentally.

Further, the location of these bags of cocaine and spilled cocaine was sufficiently conspicuous that a person inside the home would have been expected to

see the drugs in the regular course. Thus, under the circumstances, Mr. Parker's presence inside the home while 12 bags of cocaine were sitting inside the first-floor toilet reasonably supports the inference that he had a connection to the contraband. *See Heath*, 455 F.3d at 57 ("Under the circumstances, whether Heath actually saw the bags of cocaine at the bottom of the stairs before the police entered the Glenwood residence is of no import. He could see them, and in fact would be expected to see them, in the regular course of walking through the small home's public spaces. As a result, a person of reasonable caution, could properly have concluded that Heath had committed or was committing a crime.") (quotation and citation omitted); *see also Holder*, 990 F.2d at 1329 ("Of course, it was *possible* that Holder was merely an innocent visitor looking for someone else at the apartment. That he was present, for whatever reason, when the drugs were in plain view, however, makes it more likely than not that he was involved in some way in the criminal activity, and that amply satisfies probable cause.") (emphasis in original).

The government's proffer at Mr. Parker's detention hearing also provided additional information regarding the frequency of Mr. Parker's contacts with 29 Avenue C. Specifically, the government stated that law enforcement had observed Mr. Parker at 29 Avenue C on a near-daily basis in November and December of 2024, contemporaneous with street-level sales of narcotics taking place at the property through a hole in a side door, and again on multiple occasions in March 2025. (Dkt. 18 at 9, 18). The government noted that Mr. Parker's lack of presence at 29 Avenue C from December 2024 to January 2025 coincided with dates he underwent surgery

and was in the hospital. (*Id.* at 10, 24-25). Mr. Parker's regular presence at a residence that by all indications was primarily used for the purpose of selling narcotics further suggests that he was not merely present in 29 Avenue C on March 25, 2025, but present under a particular set of circumstances indicative of his complicity in the alleged criminal activity taking place at the residence. *See United States v. Heath*, No. 04-CR-6009T, 2004 WL 5299599, at *7 (W.D.N.Y. May 25, 2004) (holding that "the duration and frequency of the defendant's contacts with property being used for criminal purposes" are relevant to "a court's consideration of whether a defendant's presence at a particular location . . . may be suggestive of that defendant's complicity in a crime").

There is also probable cause to conclude that Mr. Parker committed the offense of being a felon in possession of a firearm. As to Mr. Parker's status as a felon, Special Agent Kraham's affidavit details that Mr. Parker has multiple prior felony convictions, including convictions in this District for violating 18 U.S.C. § 1839 (Conspiracy to Commit Bank Fraud) and for failing to surrender for the service of a federal sentence. (Dkt. 1 at ¶ 21). With respect to possession of the firearm found in the toilet at 29 Avenue C, an individual may directly possess a firearm, but can also "possess a gun within the meaning of the statute without ever physically handling the firearm." *United States v. Gaines*, 295 F.3d 293, 300 (2d Cir. 2002). Constructive possession, which exists where a person has the power and intention to exercise dominion and control over an object, is sufficient and can be proven by circumstantial evidence. *Id.* Such possession need not be exclusive. *Id.*; *see also United States v.*

*Dhinsa*, 243 F.3d 635, 677 (2d Cir. 2001) ("It is of no moment that other individuals also may have exercised control over the weapons."). An individual's "knowledge of and access to the illegal item" are relevant to the constructive possession inquiry. *United States v. Albarran*, 943 F.3d 106, 119 (2d Cir. 2019).

Here, similarly to the cocaine found in the toilet bowl, it is a reasonable inference that the loaded firearm found in the toilet tank—which appeared to have been recently placed due to lack of rust (*see* Dkt. 18 at 8-9)—and the magazine found in the toilet bowl were hastily placed in an attempt to conceal them from law enforcement. Indeed, Mr. Parker told the law enforcement officers executing the search warrant that he had seen them approaching on the residence's cameras. (*Id.* at 8). And as previously discussed, Mr. Parker was observed routinely coming and going from the apparent stash house in which the firearm was found. Under these circumstances, there is probable cause to conclude that Mr. Parker possessed the firearm found at 29 Avenue C. *See Albarran*, 943 F.3d at 119; *United States v. Morrell*, 138 F. App'x 373, 374 (2d Cir. 2005) ("Because the state troopers knew that appellant had prior felony convictions and had been recently seen riding in a truck in which firearms were in plain view, they had probable cause to arrest him for being a felon in possession of firearms."); *United States v. Vasquez*, 82 F.3d 574, 578 (2d Cir. 1996) (upholding conviction for being a felon in possession of a firearm in part because defendant told law enforcement "you got me" when apprehended and "officers retrieved a dry shotgun from wet ground, indicating that the gun had recently been placed there"); *United States v. Clemente*, No. S3 03 CR. 150 (LBS), 2004 WL 97689,

at *7 (S.D.N.Y. Jan. 20, 2004) ("the jury could reasonably conclude Defendant's knowledge of and access to the hidden guns constituted constructive possession of them").

With respect to the charge that the firearm was possessed in furtherance of a drug trafficking crime, "the requirement . . . that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). There is ample probable cause to conclude that such a nexus existed in this case. The loaded firearm was found inside an apparent stash house, in close proximity to the bagged cocaine found in the toilet bowl, and had apparently been recently placed in the toilet tank in an attempt to conceal its presence from law enforcement. *See United States v. Lewis*, 62 F.4th 733, 746 (2d Cir. 2023) (relevant factors in the nexus inquiry include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, . . . whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.").

Mr. Parker's arguments in support of his motion to dismiss do not compel a different conclusion as to the existence of probable cause for the charges against him. The cases that Mr. Parker cites where a defendant was searched or arrested without probable cause based on mere presence are all factually distinguishable. (*See* Dkt. 42 at 5-6). None of those cases involved the same confluence of circumstances indicative of involvement that are present here, where Mr. Parker was arrested inside a heavily fortified stash house, at which he had a documented history of being present, with

drug packaging and sales materials in plain view, a trail of spilled cocaine leading to bags of cocaine and a magazine sitting inside a nearby toilet bowl, and a recently placed loaded firearm in the tank of that same toilet.

To the extent Mr. Parker's motion seeks dismissal because the charges against him are based on insufficient evidence, evidentiary questions that "are inextricably intertwined with a defendant's potential culpability" are not appropriately addressed on a pretrial motion to dismiss. *United States v. Sampson,* 898 F.3d 270, 281 (2d Cir. 2018). While Mr. Parker argues that he is not "protesting innocence or guilt," but is instead challenging the fabrication of evidence by government officials (*see* Dkt. 42 at 12-13), an examination of Mr. Parker's claims of fabrication reveals that they are in actuality a challenge to the strength of the circumstantial evidence that the government may use to prove the charges against him. For example, Mr. Parker asserts that law enforcement manufactured a connection between himself and the evidence against his co-defendants, but in support of this argument he cites to the alleged lack of evidence tying him to a drug trafficking conspiracy. (*See id.* at 7-8). Having found that the government's evidence supports the existence of probable cause, the Court may not make any further determinations regarding the sufficiency of this evidence at this time. Mr. Parker's strenuous disagreement with the inferences to be drawn from the evidence does not establish misconduct by the government.

Mr. Parker also cites to a limited exception recognized in the Tenth Circuit, which permits a court to dismiss charges at the pretrial stage through a determination "based on undisputed facts . . . that as a matter of law, the government

is incapable of proving its case beyond a reasonable doubt." (*Id.* at 3) (citing *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir. 2006)). The Second Circuit has not recognized this exact exception, but has "recognized that a district court can adjudge the sufficiency of the evidence before trial where the government has made a full proffer of evidence or where there is a stipulated record." *United States v. Ground*, No. 11-CR-151A, 2014 WL 9940092, at *3 (W.D.N.Y. July 29, 2014), *adopted*, 2015 WL 3853071 (W.D.N.Y. June 17, 2015). Regardless of how this exception is articulated, it is not applicable here. There is not a stipulated record and the government has not made a full proffer of its evidence. Further, Mr. Parker's motion does not set forth undisputed facts that would allow the Court to determine, as a matter of law, that the government cannot prove its case beyond a reasonable doubt. Instead, Mr. Parker's motion, which sets forth his own version of the events of March 25, 2025, raises issues of fact bearing on the elements of the offenses for which he is charged. Determinations as to these issues are appropriately deferred until trial.

## CONCLUSION

For all these reasons, I conclude that the criminal complaint in this matter is supported by probable cause, and that there is no other legal basis for dismissal. Mr. Parker's motion to dismiss the criminal complaint (Dkt. 42) is accordingly denied.

SO ORDERED.

Colleen D. Holland
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: September 29, 2025
Rochester, New York